UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X

CARLOS GONZALEZ,                    :
                                    :
            Petitioner,             :
                                    :
                                    :   11 Civ. 3744 (JMF) (THK)
                                    :
      -against-                     :
                                    :   **REPORT AND RECOMMENDATION**
ADA PEREZ, WARDEN                   :
                                    :
                                    :   (**PRO SE**)
            Respondent.             :
--------------------------------X



**TO: HON. JESSE M. FURMAN, United States District Judge.**
**FROM: THEODORE H. KATZ, United States Magistrate Judge.**


On October 20, 2008, Petitioner Carlos Gonzalez ("Petitioner")
was convicted, following a jury trial in New York State Supreme
Court, New York County, of Criminal Possession of a Weapon in the
Second Degree (N.Y. Penal Law § 265.03) and Criminal Possession of
a Weapon in the Third Degree (N.Y. Penal Law § 265.02).   On
December 9, 2008, Petitioner was sentenced to concurrent prison
terms of fourteen years for the second-degree criminal weapon
possession count, to be followed by five years of post-release
supervision, and seven years for the third-degree criminal weapon
possession count, to be followed by five years of post-release
supervision.   On February 10, 2009, the court amended Petitioner's
sentence for third-degree criminal weapon possession to include
three years of post-release supervision, rather than five years.

COPIES MAILED
TO COUNSEL OF RECORD ON  5/2/12

Petitioner is presently incarcerated at the Downstate Correctional Facility in Fishkill, New York.

Petitioner seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, asserting two claims: (1) the conviction for second-degree criminal possession of a weapon was against the weight of the evidence; and (2) the evidence at trial was legally insufficient to support Petitioner's conviction of second-degree criminal possession of a weapon.[1]

The Petition was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(C). For the reasons that follow, this Court respectfully recommends that the Petition be denied.

**BACKGROUND**

I.   The Evidence at Trial

    A.   Background Facts[2]

The following evidence was produced at trial. Petitioner has a son with Elizabeth Dorsett ("Dorsett") and had a recording studio

---

[1] The Petition raises a single claim: "The weight of the evidence did not support the guilty verdict on the criminal possession of a weapon charge in the second degree." (See Habeas Corpus Petition ("Pet.") at 2.)  However, in his Memorandum of Law, Petitioner discussed both weight of the evidence and sufficiency of the evidence.  Accordingly, in opposition, Respondent addressed both the weight of the evidence claim and the legal sufficiency claim.

[2] All of the facts are agreed upon, except where noted.

2

at her apartment.   Petitioner lived with his girlfriend, Loraine Ceballo ("Ceballo"), at 1952 Second Avenue in Manhattan. Robinson Lopez ("Lopez") also lived in an apartment at 1952 Second Avenue. Petitioner testified that he found a loaded handgun while walking his dog; he brought the gun back to his recording studio and hid it in a drawer.   (See Trial Transcript, dated October 14, 2008 ("Tr."), at 806-08, 868-73.)   Petitioner's stated purpose for keeping the gun was to protect himself and his family from robbers. (See Tr. at 808-09, 873-75.)

In the early morning of June 3, 2004, Petitioner was in his recording studio in Dorsett's apartment with a friend, Omar Montes ("Montes").   (See id. at 800-05, 855-56.)   At roughly 3:00 A.M., Petitioner's girlfriend, Ceballo, was walking her dog with a friend, Tamika Taylor ("Taylor").   At that time, Lopez, his friend Dominick Castro ("Castro"), and two other unidentified men were in a parking lot nearby.   The two unidentified men approached the women, but the women kept walking.   As the women walked away, the men insulted them and threw beer bottles at them.   (See id. at 202-04, 268, 575-76.)   The unidentified men walked over to where Lopez was standing, and one of them called out Taylor's name.   (See id. at 202, 204.)   Taylor and Ceballo approached the group of men and had a heated argument.   (See id. at 202, 205-06, 270-71.)   Lopez called Ceballo a "bitch" and Ceballo stated that her "man" would

3

come to the parking lot to confront him.[3]   (See id. at 205, 270.)

Ceballo entered the building's lobby and called Petitioner;
she told him that Lopez had "disrespected" her[4] and that he needed
to come to the building at 1952 Second Avenue.[5]   (See id. at 208-
09, 803, 858-860.)   Before leaving Dorsett's apartment, Petitioner
took his handgun from his office desk.   Petitioner testified that
he took the gun because he felt threatened and feared for his life.
(See id. at 809.)   Petitioner had heard that Lopez had a gun and a
gun holster.   (See id. at 810.)   Petitioner also knew that Lopez
was aggressive and violent with Ceballo's ex-boyfriends and with
women in general.   (See id. at 810-13.)

B.   The Incident

Petitioner arrived at the building with his friend, Montes,
and Petitioner and Montes asked about Lopez's whereabouts.   (See
id. at 209-11, 293.)   Ceballo led the men to the parking lot.   (See
id. at 211-12.)   Petitioner walked toward the middle of the parking

---

[3] Lopez previously dated Ceballo, but, at the time of the
incident he lived in an apartment with his wife and son. (See id.
at 74-76, 190-93, 269.)

[4] Petitioner testified that Ceballo told him that Lopez had
insulted her and made personal threats that were intended to be
aimed at Petitioner.   (See id. 803, 858-60, 898.)

[5] Petitioner testified that he told Ceballo he would come
over because he was planning to shut down his studio and come
home anyway.   (See id. at 862.)   Petitioner also testified that
he did not tell Montes that he was armed or about the contents of
his conversation with Ceballo.   (See id. at 864-65, 879, 909.)

4

lot.  The women stood next to the rear door of the building, and Montes stood behind a van near the back of the lot.  (See id. at 213-18, 222, 231, 586-87, 601-02, 653-55, 658.)  Petitioner asked to speak to Lopez, who responded that there was "nothing to talk about."  (Id. at 598-99.)  Lopez walked toward Petitioner, stating that Petitioner came to fight.  (See id. at 602-03.)  Lopez then put his arms up.  (See id. at 603.)  Castro testified that at this point Lopez was "aggressive" and loud, and that Petitioner was "polite" and not "aggressive."  (See id. at 656-57.)  Petitioner testified that he did not become "aggressive" until he felt that he had to defend himself.  (See id. at 847, 850-51.)

At trial, the parties disputed whether Lopez was armed. Witnesses testified that Lopez was not armed and simply raised his fists, at which point Petitioner pointed his gun and shot Lopez in his left hand.  (See id. at 217-18, 238, 290.)  Lopez asked if Petitioner was crazy and began to run in between the cars toward the building.[6]  (See id. at 219-20, 239.)  Petitioner chased Lopez and continued to shoot at him.  (See id. at 219-20, 239-40, 292, 309-12, 316, 359, 618-19, 664, 673-74.)  Petitioner contended that Lopez pulled a gun out of his back-pocket and pointed it at him.

---

[6]Castro testified that Lopez turned and began running after Petitioner fired a second shot at Lopez's chest.  (See id. at 606-07, 664, 666, 673-74, 685.)

(See id. at 826, 904, 915.)  According to Petitioner, Petitioner and Lopez wrestled for control of Lopez's gun, and Lopez's gun went off in the direction of the building.  (See id. at 830, 916-17.) At that point Petitioner pulled out his gun and fired two shots at Lopez.  (See id. at 826-30, 850-51.)  Petitioner continued shooting at Lopez because he thought Lopez was going to shoot and kill him. (See id. at 832-34.)

Lopez reached a grassy area and fell backwards.  (See id. at 220-21, 835-36.)  The People contended that Petitioner stood over Lopez and shot him two more times.  (See id. at 221, 240, 266, 291, 310-13.)  Petitioner denied this allegation.  (See id. at 840.) Petitioner testified that he picked up Lopez's gun to prevent Lopez's friends from using it.  (See id. at 836-37.)  However, none of the witnesses saw Lopez hold or fire a gun at any point during the confrontation.  (See id. at 227, 239, 241, 688.)

After the shooting, Petitioner, Montes, Ceballo, and Taylor ran back into the building.  Petitioner placed the gun in Ceballo's handbag.[7]  (See id. at 224, 233, 261.)  Ceballo and Taylor ran upstairs, while Petitioner and Montes left the building and fled to Florida.  (See id. at 226, 841-42, 957-58.)

C.    The Investigation

---

[7] Petitioner testified that he placed both his gun and Lopez's gun in Ceballo's purse.  (See id. at 842, 939, 943.)

6

New York City police arrived at the parking lot around four o'clock in the morning, and found Lopez lying dead in the grass with no weapons around him.  (See id. at 103, 403-04, 499-502.) Officers found no firearms, but recovered  one deformed bullet and nine discharged casings, seven in the parking lot and two near Lopez's body.  (See id. at 103, 105-14.)  A New York City Police Department firearms analyst found that six of the shell casings were fired from one gun and the other three were fired from a second gun.  (See id. at 709, 717-18, 728, 730-31.)  Police determined that all of the casings had been fired that night. (See id. at 178.)

An autopsy showed that Lopez suffered ten gunshot wounds: six entrance wounds, three exit wounds and a graze wound to a hand. (See id. at 442-43.)  A New York City medical examiner testified that Lopez was killed by gunshot wounds to the head and torso, with additional perforations of his spleen, heart, lung, and liver. (See id. at 475.)

Following the shooting, police could not locate Petitioner. (See id. at 740.)  Officers spoke to Dorsett, but she had not heard from Petitioner.[8]  Dorsett and her son did not hear from Petitioner

---

[8] Dorsett testified that in the years leading up to the shooting Petitioner saw his son almost every day.  (See id. at 778-79.)

for roughly four years after the shooting.  (See id. at 781.)  On May 21, 2008, Petitioner was found and arrested in Camden, New Jersey, and was later transported to New York City.[9]  (See id. at 746.)

The jury acquitted Petitioner of the second-degree murder charge, but convicted him of second- and third-degree criminal possession of a weapon.  (See id. at 1223-24.)

II.  Procedural History

On December 9, 2008, prior to sentencing, Petitioner filed a post-verdict motion, pursuant to New York Criminal Procedure Law § 330.30, to set aside the verdict with respect to the second-degree criminal possession of a weapon charge.  Petitioner argued that the People "failed to prove that [Petitioner] possessed his gun with the intent to use it unlawfully against another person."  (Brief of Defendant-Appellant ("Pet'r App. Br.") at 39 (emphasis in

---

[9] Montes, who accompanied Petitioner on the morning of June 3, 2004, was arrested several weeks after the incident.  A grand jury indicted Montes on charges of second-degree murder and second- and third-degree criminal possession of a weapon.  The jury convicted Montes of third-degree criminal possession of a weapon and acquitted him of the remaining charges.  As a second felony offender, Montes was sentenced to seven years in prison. He appealed to the Appellate Division, First Department, and his conviction was affirmed.  See People v. Montes, 67 A.D.3d 586, 893 N.Y.S.2d 515 (1st Dep't 2009).  On December 14, 2009, leave to appeal to the Court of Appeals was granted, and the conviction was again affirmed.  See People v. Montes, 16 N.Y.3d 250, 920 N.Y.S.2d 756 (2011).

original.))  The court denied the motion, stating that there was no inconsistency in the jury finding Petitioner guilty of second-degree criminal possession of a weapon while also finding that he used the gun against Lopez in self-defense.  (See id.)

On December 9, 2008, the court sentenced Petitioner to concurrent prison terms of fourteen years for the second-degree criminal possession of a weapon count, to be followed by five years of post-release supervision, and seven years for the third-degree criminal possession of a weapon count, to be followed by five years of post-release supervision.  On February 10, 2009, the court amended Petitioner's sentence for third-degree criminal possession of a weapon to include three years of post-release supervision, rather than five years.

Petitioner filed an appeal with the Appellate Division, First Department, raising three claims: (1) his conviction of second-degree criminal possession of a weapon was against the weight of the evidence because he was acquitted of second-degree murder on a justification theory; (2) the evidence at trial was legally insufficient to support the second-degree criminal possession of a weapon conviction because it did not prove that he possessed intent to use the gun unlawfully; and (3) the court's sentence of fourteen years' incarceration was harsh and excessive in light of his lack of a criminal history and need to raise his children.  (See Pet'r

9

App. Br. at 41, 55.)

On March 11, 2010, the Appellate Division unanimously affirmed Petitioner's conviction.  See People v. Gonzalez, 71 A.D.3d 472, 473, 897 N.Y.S.2d 55, 56 (1st Dep't 2010).  The court held that "even assuming that [Petitioner] acted with justification at the moment he fired his first shots . . . the evidence supports the conclusion that he possessed the weapon with the requisite unlawful intent immediately before or after that point in time, or both." Id.  In addition, the court held that the legal sufficiency claim was unpreserved and declined to review it; however, as an alternative holding, the court rejected the claim on the merits. On June 30, 2010, the New York State Court of Appeals denied Petitioner's application for leave to appeal.  See People v. Gonzalez, 15 N.Y.3d 750, 906 N.Y.S.2d 823 (2010).

## DISCUSSION

In this proceeding Petitioner claims that: (1) the conviction for second-degree criminal possession of a weapon was against the weight of the evidence; and (2) the evidence at trial was legally insufficient to support the second-degree criminal possession of a weapon conviction.  Respondent argues that Petitioner's weight of the evidence claim is not cognizable on habeas review because it relies solely on state law, and that the legal insufficiency claim is unpreserved and procedurally barred.

10

I.   AEDPA Standard of Review

Pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1) & (2).   A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."   Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000); accord Richard S. v. Carpinello, 589 F.3d 75, 80 (2d Cir. 2009).   The phrase "clearly established Federal law" limits the law governing a habeas Petitioner's claims "'to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"   Carey v. Musladin, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006) (quoting Williams, 529 U.S. at 412, 120 S. Ct. at 1523); accord Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006).   "The 'unreasonable application' standard is independent of

11

the 'contrary to' standard . . . [and] means more than simply an 'erroneous' or 'incorrect' application [of federal law]." Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005) (citing Williams, 529 U.S. at 410-11, 120 S. Ct. at 1522). A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal rule, but applies it in an unreasonable manner to the facts of a particular case. See Williams, 529 U.S. at 413, 120 S. Ct. at 1523.

The inquiry for a federal habeas court is not whether the state court's application of the governing law was incorrect, but rather whether it was "objectively unreasonable." See id. at 409-10, 120 S. Ct. at 1521-22 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."); Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) ("[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently. The state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable."); Lurie v. Wittner, 228 F.3d 113, 128-29 (2d Cir. 2000) (same).

Moreover, under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The

12

[Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003) (citations omitted).

II.   Petitioner's Claims

    A.   Weight of the Evidence

Petitioner's weight of the evidence claim arises under New York Criminal Procedure Law § 470.15(5), which permits a New York appellate court to reverse or modify a conviction where it determines "a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. Crim. Proc. § 470.15(5). A weight of the evidence claim is a purely state law claim and it is not cognizable in a federal habeas proceeding. See 28 U.S.C. § 2254(a) (allowing federal habeas corpus review only where the Petitioner has alleged that he is in state custody in violation of the "Constitution or laws or treaties of the United States"); Estelle v. McGuire, 502 U.S. 62, 68, 112 S. Ct. 475, 480 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations

omitted); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990) (stating that habeas corpus review is not available where there is simply an alleged error of state law); <u>McKinnon v. Superintendent, Great Meadow Corr. Facility</u>, 422 Fed. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus[.]") (citations omitted); <u>Cintron v. Fisher</u>, No. 07 Civ. 1058 (KMK)(PED), 2012 WL 213766, at *3 (S.D.N.Y. Jan. 24, 2012) (same).

Accordingly, this Court cannot provide relief on Petitioner's weight of the evidence claim and it should be dismissed.

B.  <u>Legal Sufficiency</u>

Petitioner claims that the evidence at trial was legally insufficient to support his second-degree criminal possession of a weapon conviction. Legal sufficiency claims are cognizable on habeas review. "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979). Nonetheless, Petitioner failed to preserve this claim, and this Court is procedurally barred from considering its merits.

1.   <u>Procedural Bar</u>

A federal habeas court may not review a federal issue when the state court's ruling on the claim rested upon "a state law ground that is independent of the federal question and adequate to support the judgment," <u>Coleman v. Thompson</u>, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991) (citations omitted), "unless [the] petitioner can show both cause and prejudice or a fundamental miscarriage of justice." <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 2000) (citations omitted). A state procedural default is not adequate unless it is based on a state procedural rule that "is firmly established and consistently followed" by the state in question. <u>Martinez v. Ryan</u>, -- U.S. --, --, 132 S. Ct. 1309, 1316 (2012); <u>see</u> <u>Walker v. Martin</u>, -- U.S. --, --, 131 S. Ct. 1120, 1128 (2011) (stating that for a state rule to be adequate it must be "firmly established and regularly followed.") (internal quotation marks and citations omitted); <u>Brown v. Miller</u>, No. 04 Civ. 9804 (LBS), 2005 WL 1773683, at *3 (S.D.N.Y. July 26, 2005) (same).

There are a "small category of cases in which [the] asserted state grounds are inadequate to block adjudication of a federal claim[]" or "in which [the] exorbitant application of a generally sound rule renders the state ground inadequate" to bar consideration of the federal constitutional claim. <u>Lee v. Kemna</u>, 534 U.S. 362, 376, 381, 122 S. Ct. 877, 885, 888 (2002). There are

three factors to consider when deciding if a case fits within that limited category:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003).

A federal court will not treat a claim as procedurally barred unless there is a clear, plain statement from the state court that it found a procedural default. See Coleman, 501 U.S. at 736-37, 111 S. Ct. at 2557-58; Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043 (1989); Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001); Fama, 235 F.3d at 809. A federal court must apply a presumption against finding a procedural bar, and must look not to what the state court "'actually might have intended but whether the state court plainly stated its intention.'" Galarza, 252 F.3d at 637 (quoting Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000)).

a.   Contemporaneous Objection Rule

New York requires that any "'matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the

16

opportunity to remedy the problem and thereby avert reversible error.'" <u>Garcia v. Lewis</u>, 188 F.3d 71, 78 (2d Cir. 1999) (quoting <u>People v. Luperon</u>, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 738-39 (1995)); <u>see</u> N.Y. Crim. Proc. Law § 470.05(2) (stating that under New York law, a question of law is preserved for appellate review only if "a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."). The Second Circuit has found the New York contemporaneous objection rule to be "adequate under firmly established and regularly followed state law . . . ." <u>Garvey v. Duncan</u>, 485 F.3d 709, 720 (2d Cir. 2007). Accordingly, if a petitioner fails to raise a contemporaneous objection, the claim is procedurally barred on federal habeas review.

Here, Petitioner's legal sufficiency claim is unpreserved and procedurally barred because Petitioner failed to make a contemporaneous objection. In New York, a legal sufficiency of the evidence objection takes the form of a motion to dismiss. <u>See</u> <u>Sanchez v. Lee</u>, No. 10 Civ. 7719 (PKC)(AJP), 2011 WL 924859, at *22 (S.D.N.Y. Mar. 26, 2011); <u>People v. Hines</u>, 97 N.Y.2d 56, 62, 736 N.Y.S.2d 643, 646-47 (2001); <u>People v. Thomas</u>, 36 N.Y.2d 514, 516-17, 369 N.Y.S.2d 645, 648 (1975). To preserve the claim, the motion to dismiss must be made "at the close of the People's case."

17

See Thomas, 36 N.Y.2d at 516, 369 N.Y.S.2d at 648 (internal quotation marks and citation omitted).  Furthermore, a failure to make the required motion is "'tantamount to a concession that issues of fact to be determined by the jury were created by the evidence.'"  Id. at 516-17, 369 N.Y.S.2d at 648 (quoting Henry Cohen & Arthur Karger, The Powers of the New York Court of Appeals 748-49 (1994) (citing People v. Nixon, 248 N.Y. 182, 190-91 (1928))).  The objection must be both timely and "'specifically directed at the alleged error'" to preserve that objection for appeal.  See Bierenbaum v. Graham, 607 F.3d 36, 57 (2d Cir. 2010) (quoting People v. Gray, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 175 (1995)).

Here, Petitioner made a motion to dismiss at the end of the People's case, relying on the record.  (See Tr. at 798.)  The Court denied the motion to dismiss.  (See id.)  However, Petitioner's objection was not specifically  directed at the alleged error — that is, at the sufficiency of the evidence.  New York's courts "uniformly instruct" that to preserve a particular issue for review a defendant must "specifically focus on the alleged error" in the objection.  Garvey, 485 F.3d at 714-15 (citations omitted). "[A] general motion to dismiss [is] not sufficient to preserve the contention that there [is] insufficient evidence to support a specific element of the crime charged . . . ."  Brito v. Phillips,

18

485 F. Supp. 2d 357, 361 (S.D.N.Y. 2007) (discussing Gray, 86 N.Y.2d at 19, 629 N.Y.S.2d at 175); see also Cintron, 2012 WL 213766, at *1 (finding that a general motion to dismiss was insufficient to preserve an insufficiency of the evidence claim); Scission v. Lempke, 784 F. Supp. 2d 237, 244 (W.D.N.Y 2011)("[A] general motion to dismiss is not sufficient to preserve the contention that the evidence at trial was insufficient to establish a specific element of the crime charged.") (citation omitted); People v. Gray, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 175 (1995) ("[E]ven where a motion to dismiss for insufficient evidence [is] made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error."). Petitioner made a general motion to dismiss, which was not sufficient to preserve the issue of legal insufficiency because it did not alert the court to Petitioner's position.

The application of New York's preservation rule in Petitioner's case satisfies the three factors set out in Cotto, making it sufficient to block adjudication of the federal claim. First, there is nothing in the record showing that the trial court was aware of Petitioner's claim that the evidence was legally insufficient to prove second-degree criminal possession of a weapon. (See Tr. at 798.) If Petitioner had raised the objection in the trial court, it would have ruled on the issue and the claim

would have been preserved for review by the Appellate Division. Second, New York courts have long required claims challenging the legal sufficiency of the evidence to be preserved in the trial court. Specifically, as mentioned above, a legal sufficiency of the evidence objection takes the form of a motion to dismiss made at the close of the People's case. See Sanchez, 2011 WL 924859, at *22; Hines, 97 N.Y.2d at 62, 736 N.Y.S.2d at 647; Thomas, 36 N.Y.S.2d at 516, 369 N.Y.S.2d at 648. The motion to dismiss must be made "at the close of the People's case" for the claim to be preserved for review. See Thomas, 36 N.Y.S.2d at 516, 369 N.Y.S.2d at 648. Finally, Petitioner did not "substantially comply" with the contemporaneous objection requirement, and New York courts require compliance to alert courts to the error at a time when the court can address the problem. Therefore, Petitioner's case does not fall within the small category of cases in which the "state grounds are inadequate to block adjudication of the federal claim." Kemna, 534 U.S. at 381, 122 S. Ct. at 888.

The Appellate Division ruled that Petitioner's legal sufficiency claim was not preserved for review. See Gonzalez, 71 A.D.3d at 473, 897 N.Y.S.2d at 56. Because there was an independent and adequate state law basis for that conclusion, this Court cannot review the claim unless Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation

20

of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565; see also Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996).  The cause and prejudice requirement "shows due regard for States' finality and comity interests while ensuring that 'fundamental fairness [remains] the central concern of the writ of habeas corpus.'" Dretke, 541 U.S. at 393, 124 S. Ct. at 1852 (quoting Strickland v. Washington, 466 U.S. 668, 697, 104 S. Ct. 2052, 2070 (1984)).  Cause for a procedural default exists when "something *external* to the Petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'" Coleman, 501 U.S. at 753, 111 S. Ct. at 2566 (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986)) (emphasis in original).  The external factors can include: (1) a showing that the defendant was represented by counsel who was constitutionally ineffective; (2) a showing that the factual or legal basis for a claim was not reasonably available at the time of the default; or (3) interference by state officials that made compliance with the procedural mechanism impracticable. See Murray, 477 U.S. at 488, 106 S. Ct. at 2645.

Alternatively, if a petitioner cannot show cause and resulting prejudice, the petitioner may still overcome a procedural bar by

demonstrating "that failure to consider the claim will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565; see also Schlup v. Delo, 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995).  This occurs only in the extraordinary case "'where a constitutional violation has probably resulted in the conviction of one who is actually innocent' . . . ." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (quoting Murray, 477 U.S. at 496, 106 S. Ct. at 2649); accord Lebron v. Mann, 40 F.3d 561, 564 (2d Cir. 1994).  The Supreme Court has explained that this exception should "remain rare" and should be applied only in "extraordinary case[s]." Schlup, 513 U.S. at 321, 115 S. Ct. at 864 (internal quotation marks omitted).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623-24, 118 S. Ct. 1604, 1611 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339, 112 S. Ct. 2514, 2518-19 (1992)). "To establish actual innocence, [a] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. (internal quotation marks omitted) (citing Schlup, 513 U.S. at 327-28, 115 S. Ct. at 867-68).  A petitioner must "support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.

22

Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324, 115 S. Ct. at 865; accord Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004).

Petitioner makes no attempt to establish either cause or prejudice for failing to preserve his legal sufficiency claim. In addition, Petitioner has not provided "new reliable evidence" to establish actual innocence and demonstrate that no reasonable juror would have convicted him. Accordingly, the independent state law ground is adequate to support the judgment of the Appellate Division affirming Petitioner's conviction and, therefore, sufficient to foreclose federal habeas review of the unpreserved claim. Cf. Garcia, 188 F.3d at 76 (enforcing procedural bar "ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.") (quoting Coleman, 501 U.S. at 732, 111 S. Ct at 2555); see also Spence v. Superintendent, Great Meadow Corr. Facility, 219 F.3d 162, 170 (2d Cir. 2000) ("The doctrine of procedural default is based on considerations of comity and finality . . . .").

### 2.   Legal Insufficiency Claim is Meritless

Even if the legal sufficiency claim is not procedurally barred, the claim is meritless. A "sufficiency of the evidence" claim is based on federal due process principles. See Jackson v. Virginia,

443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).   It is well-established "that '[i]n challenging the sufficiency of the evidence to support [a] conviction, a defendant bears a heavy burden.'" United States v. Abelis, 146 F.3d 73, 80 (2d Cir. 1998) (quoting United States v. Giraldo, 80 F.3d 667, 673 (2d Cir. 1996)); accord Quirama v. Michele, 983 F.2d 12, 14 (2d Cir. 1993).   To overturn a conviction based on insufficiency of the evidence, a petitioner must establish that, viewing "the evidence in the light most favorable to the State[,] . . . no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002); accord Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995).   "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; see also Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) ("[T]he government receives the benefit of having all permissible inferences drawn in its favor[.]").

AEDPA precludes a court from granting a petition for a writ of habeas corpus on the grounds of insufficiency of the evidence unless the state court unreasonably applied the principles underlying the

24

Jackson standard when reviewing a Petitioner's claim.  See Langston v. Smith, 630 F.3d 310, 320 (2d Cir.), cert. denied, Conway v. Langston, 132 S. Ct. 366 (2011).

N.Y. Penal Law § 265.03(2) states that a person is guilty of second-degree criminal possession of a weapon when he possesses a "loaded firearm" with the "intent to use the same unlawfully against another." N.Y. Penal Law § 265.03(1).  Petitioner argues that the evidence at trial was legally insufficient to support his conviction because the credible evidence at trial established the Petitioner's intended use of his weapon on June 3, 2004 was at all times lawful. Without unlawful intent, all of the elements of New York's second-degree criminal possession of a weapon statute would not be proven.

However, the evidence adduced at Petitioner's trial provided ample grounds for the triers of fact to conclude beyond a reasonable doubt that Petitioner criminally possessed a weapon in the second degree.  Petitioner possessed a "loaded firearm."  Petitioner admitted that he brought the loaded gun to the parking lot at 1952 Second Avenue.  (See Tr. at 806, 860, 875, 919.)  In addition, several of the witnesses, including Tamika Taylor, Dominick Castro, Danny Murrell, and Vera Walcott, testified that Petitioner brought a loaded firearm to the parking lot at 1952 Second Avenue.  (See id. at 218, 220-22, 233, 239-40, 255, 260, 265-67, 291-92, 310-12, 316, 351, 359-60, 372-73, 528-29, 533-34, 604-05, 607-10, 618-19, 624,

25

661-64, 672-74.)

Moreover, the evidence demonstrated that Petitioner intended to use the weapon unlawfully.  On the morning of June 3, 2004, Petitioner received a call from his girlfriend, Ceballo, who told him that she had been insulted.  (See Tr. 207-09.)  Petitioner retrieved his weapon, went to Ceballo's building, asked where Lopez was, and went directly to the parking lot to talk to Lopez.  (See id. 209-213, 293.)  Petitioner's act of arming himself prior to his confrontation with Lopez was sufficient evidence to establish unlawful intent.  See People v. Guzman, 266 A.D.2d 37, 38, 697 N.Y.S.2d 623, 624 (1st Dep't 1999) (stating that a defendant arming himself with a pistol before a confrontation is enough evidence to establish possession of the pistol with unlawful intent) (citing People v. Russell, 227 A.D.2d 232, 232, 642 N.Y.S.2d 651, 652 (1st Dep't 1996)).  A defendant may be convicted of criminal possession of a weapon in the second degree when he simply uses a firearm to intimidate, menace, or harass another person.  See People v. James, 40 A.D.3d 281, 282, 836 N.Y.S.2d 26, 27 (1st Dep't 2007); People v. Sell, 283 A.D.2d 920, 922, 725 N.Y.S.2d 486, 489 (4th Dep't 2001); People v. Fernandez, 262 A.D.2d 170, 170, 692 N.Y.S.2d 66, 66 (1st Dep't 1999).  Here, Petitioner went beyond using the firearm to intimidate, menace or harass another person, and actually fired shots at Lopez.  (See Tr. at 826, 828-29, 904, 919.)  Under New York

26

law, "the possession of a[n] [unlicensed] firearm is presumptive evidence that [the possessor] intended to use it unlawfully against another person." Pagan v. Brown, No. 07 Civ. 0453 (JS)(WDW), 2011 WL 3235769, *5 (E.D.N.Y. July 28, 2011) (citing N.Y. Penal Law § 265.15); see also People v. Cabey, 85 N.Y.2d 417, 421-22, 626 N.Y.S.2d 20, 23 (1995) ("The issue of defendant's intent was one of fact for the jury.").

Petitioner argues that his acquittal on the second-degree murder charge proves that he did not possess the intent to use the loaded gun unlawfully. (See Pet. at 14.) In essence, he contends that the jury accepted his self-defense justification, and, therefore, he did not act unlawfully. This claim is unavailing because intent to kill is not an element of second-degree criminal possession of a weapon. Even if Petitioner acted in self-defense when he shot Lopez, he could still be guilty of criminal possession of a weapon. In People v. Guzman, the court upheld the defendant's conviction for possessing a knife with the intent to use it unlawfully, even though the defendant was acquitted of homicide. See 266 A.D.2d at 37, 697 N.Y.S.2d at 623. The Appellate Division cited Guzman, and noted that Petitioner's second-degree murder acquittal only shows that the jury "found a lack of proof of some element of second-degree murder." Gonzalez, 71 A.D.3d at 473, 897 N.Y.S.2d at 56.

Based on the evidence presented at Petitioner's trial, a reasonable trier of fact could rationally conclude that Petitioner had the requisite intent to use the loaded gun unlawfully. Therefore, the Appellate Division's alternative holding that Petitioner's conviction of second-degree criminal possession of a weapon was supported by sufficient evidence was not an unreasonable application of the <u>Jackson</u> standard.

**CONCLUSION**

For the reasons set forth above, this Court respectfully recommends that the Petition be dismissed with prejudice. Further, because Petitioner has not made a substantial showing of the denial of a federal right, this Court recommends that no certificate of appealability be issued. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Lucidore v. N.Y. State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000)  This Court further recommends certification, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the Court's order would not be taken in good faith. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 445-46, 82 S. Ct. 917, 921 (1962).

Pursuant to 28 U.S.C. § 636(b)(1)(C)and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6(a), (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of

28

the Honorable Jesse M. Furman, United States District Judge, and to the chambers of the undersigned, Room 1660.  Any requests for an extension of time for filing objections must be directed to Judge Furman.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140, 155, 106 S. Ct. 466, 475 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: May 2, 2012
       New York, New York

29